FILED
2019 May-01 AM 10:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| AMBER SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action Number |
| | ) | **5:18-cv-01111-AKK** |
| RACHELLE E. MORGAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Amber Smith brings this action against Rachelle E. Morgan a.k.a. Rachelle Wilson, Center Hill Enterprises, LLC, and Lewis & Raulerson, Inc. for violations of Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181 *et seq.*, and related state law tort claims. *See* docs. 1, 26. Wilson and Center Hill have jointly moved to dismiss the ADA claims pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Doc. 17. The motion, which is fully briefed and ripe for review, docs. 17, 18, 31, 33, is due to be denied.

**I. STANDARD OF REVIEW**

A 12(b)(1) challenge for lack of subject matter jurisdiction may take the form of a facial or factual attack on the complaint. *See McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). A facial

1

attack "'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction' taking 'the allegations in [her] complaint . . . as true.'" *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). On the other hand, a factual attack challenges "'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings . . . are considered.'" *Id.* (quoting *Lawrence*, 919 F.2d at 1529). "[W]hen a defendant properly [raises a factual] challenge[ ] . . . 'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional issue.'" *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (quoting *Lawrence*, 919 F.2d at 1529). In a factual attack on subject matter jurisdiction, "[t]he district court has the power to dismiss for lack of subject matter jurisdiction on any of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).[1]

However, a district court "should only rely on Rule 12(b)(1) 'if the facts necessary to sustain jurisdiction *do not implicate the merits of plaintiff's cause of*

---

[1] Decisions of the former Fifth Circuit rendered before October 1, 1981 are binding as precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

2

*action.*'" *Morrison*, 323 F.3d at 925 (quoting *Garcia v. Copenhaver, Bell & Associates*, 104 F.3d 1256, 1261 (11th Cir. 1997)) (emphasis in original). "When the jurisdictional basis of a claim is intertwined with the merits, the district court should apply a Rule 56 summary judgment standard when ruling on a motion to dismiss which asserts a factual attack on subject matter jurisdiction." *Lawrence*, 919 F.2d at 1530. In other words, "the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Morrison*, 323 F.3d at 925 (quoting *Williamson*, 645 F.2d at 413).

## II. BACKGROUND

This action arises out of an incident that occurred when Amber Smith, her husband, Chad Smith, and their two daughters visited an Exxon gas station and convenience store in Hanceville, Alabama that is operated by Center Hill Enterprises, LLC. Doc. 1 ¶¶ 6, 8, 13. Mrs. Smith is deaf and has a service dog, Sassy, that assists her with daily activities. Doc. 1 ¶ 3. On the day the Smiths and Sassy stopped at the Hanceville Exxon, Ashleigh Chaffin, a member of Center Hill Enterprises who works at the store, informed the Smiths that Sassy was not permitted in the convenience store. Docs. 1 ¶¶ 13-14; 31-1 ¶¶ 3-5 (Chad Smith

Aff.); 17-2 ¶ 4 (Ashleigh Chaffin Decl.).² When Mr. Smith explained that Mrs. Smith was deaf and that Sassy was her service animal, Chaffin requested proof. Docs. 1 ¶¶ 15-17; 31-1 ¶¶ 5-7; 17-2 ¶ 4. After Mr. Smith lawfully refused to provide such proof, Chaffin called the police. Docs. 1 ¶ 20; 31-1 ¶¶ 6-10; 17-2 ¶ 4. Allegedly, at this time, Chaffin did not allow the Smiths to purchase items from the store, did not permit Mrs. Smith to walk around the store with Sassy, and demanded that the Smiths leave. Docs. 1 ¶¶ 16-20; 31-1 ¶¶ 6-10.

Subsequently, three Hanceville police officers, including Chief Bob Long, responded to the store. Docs. 1 ¶ 22; 31-1 ¶ 12; 17-2 ¶ 5. Rachelle Wilson, a Center Hill manager, also arrived at the store at some point after the police officers. Doc. 17-1 ¶¶ 3-5. The officers requested proof from Mr. Smith that Sassy was a service animal,³ docs. 1 ¶ 23; 31-1 ¶¶ 12-14, which Mr. Smith eventually provided, docs. 1 at 7; 31-1 ¶ 15. Despite the proof, the officers and either Chaffin or Wilson allegedly instructed Mr. Smith to tell Mrs. Smith "to stand at the

---

² Rachelle Wilson, a manager and member of Center Hill Enterprises, was not present for the initial encounter. Doc. 17-1 ¶ 3 (Rachelle Wilson Decl.). Although the complaint and Mr. Smith's affidavit refer to a "store manager," Chaffin's affidavit clarifies that she, rather than Wilson, was the employee who stopped and questioned the Smiths and, therefore, is the "store manager" referenced in the complaint and in Mr. Smith's affidavit. *See* docs. 1 ¶¶ 14-23; 31-1 ¶¶ 4-11; 17-1 ¶¶ 3-4; 17-2 ¶¶ 3-6.

³ The parties dispute what Chief Long told the parties regarding the legality of the Defendants' requests for service animal documentation. The Smiths contend that Chief Long asserted that the Hanceville City Attorney had informed him, over the phone, that both the police and the Defendants *could* request proof that Sassy was a service animal. Doc. 31-1 ¶ 14. However, Chaffin and Wilson assert that Chief Long, after speaking with the City Attorney, stated that store employees could *not* ask for proof. Docs. 17-1 ¶ 5 (Rachelle Wilson Decl.); 17-2 ¶ 5.

entrance with Sassy and not move[.]" Docs. 1 ¶ 27; 31-1 ¶¶ 17-18. Ultimately, Mr. Smith paid for food and drinks and the Smiths left. Docs. 1 ¶ 30; 31-1 ¶¶ 17-18. Mrs. Smith has since filed the present action seeking, in part, injunctive relief and attorney's fees for alleged violations of Title III of the ADA. *See* doc. 1 at 31.

According to Wilson and Chaffin, Wilson convened the store's employees immediately following the incident and explained that they could not ask for proof that an individual's animal is a service animal. Docs. 17-1 ¶ 7; 17-2 ¶ 7. Subsequently, Wilson also printed and distributed to her employees a bulletin from the Department of Justice's website that explains the ADA's service animal-related requirements, including that "businesses . . . that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go." Doc. 17-1 at 5, 11. In addition, after Mrs. Smith filed this lawsuit, Wilson posted a sign in the front window of the store that states, "Notice: Service Animals Welcome." Docs. 17-1 at 5, 8; 17-2 ¶ 9. Finally, Wilson and Chaffin aver that, since the Smiths' visit, the store's practice is to permit service animals without asking for documentation, and no employees have asked any questions about service animals or excluded any animal from the store. Docs. 17-1 ¶¶ 8-10; 17-2 ¶¶ 8-9. Wilson asserts that if the Smiths were to return with a service animal, "they would be permitted in the store and served without any issues." Doc. 17-1 ¶ 8.

## III. ANALYSIS

### A. <u>Whether the Court Should Analyze the Defendants' Motion Under Federal Rule of Civil Procedure 12(b)(1) or 56</u>

As an initial matter, the court must determine whether the motion to dismiss "implicate[s] the merits of [Mrs. Smith's] cause of action" and, therefore, should be converted to a motion for summary judgment under Rule 56. *Morrison*, 323 F.3d at 925. In her complaint, Mrs. Smith alleges that the Defendants, who own and operate a place of public accommodation, discriminated against her on the basis of her disability in violation of 42 U.S.C. § 12182.[4] *See* doc. 1. Allegedly, the Defendants: (1) improperly inquired about her disability, demanded proof of a service animal, and excluded Mrs. Smith from the convenience store and areas within the store where customers without disabilities were permitted in violation of 28 C.F.R. § 32.302(c)(1), (3), (6)-(7);[5] (2) failed to make reasonable modifications

---

[4] A *prima facie* case under Title III requires a plaintiff to show that "(1) [she] is a disabled individual; (2) the defendants own, lease, or operate a place of public accommodation; and (3) the defendants discriminated against the plaintiff within the meaning of the ADA." *Norkunas v. Seahorse NB, LLC*, 444 F. App'x 412, 416 (11th Cir. 2011) (citing 42 U.S.C. § 12182(a)).

[5] The relevant provisions of 28 C.F.R. § 36.302(c) state, in part:
> (c) Service animals—
> (1) General. Generally, a public accommodation shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability. . . .
> (6) Inquiries. A public accommodation shall not ask about the nature or extent of a person's disability, but may make two inquiries to determine whether an animal qualifies as a service animal. . . . A public accommodation shall not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal. . . .
> (7) Access to areas of a public accommodation. Individuals with disabilities shall be permitted to be accompanied by their service animals in all areas . . . where members of the public . . . are allowed to go.

in their policies, practices, and procedures to provide Mrs. Smith and individuals with disabilities equal access to the store in violation of 42 U.S.C. § 12182(b)(2)(A)(ii);[6] and (3) denied Mrs. Smith "full and equal enjoyment" of the store in violation of 42 U.S.C. § 12182(a).[7] *See* docs. 1 at 5-24; 31 at 7-8. For these alleged violations, Mrs. Smith seeks an order directing the Defendants to: (a) modify their policies and practices to comply with the ADA's requirements for the treatment of individuals with disabilities who have service animals, and (b) provide Mrs. Smith "full and equal use and access" to the gas station and convenience store. Doc. 1 at 31.

The Defendants assert that Mrs. Smith's claims for injunctive relief and attorney's fees are moot because, following the discriminatory incident in question, they "immediately modified their practices to comply with ADA requirements for service animals and have consistently complied with those requirements." Doc. 18 at 2; *see* docs. 17-1; 17-2. Because the Defendants rely on witness declarations outside of the pleadings to support their contentions, their motion is properly

---

[6] 42 U.S.C. § 12182(b)(2)(A)(ii) provides that "discrimination" under Title III includes:
> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]

[7] 42 U.S.C. § 12182(a) states:
> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

7

characterized as a factual, rather than a facial, challenge to subject matter jurisdiction. *See McElmurray*, 501 F.3d at 1251. Furthermore, because the Defendants challenge the claims on mootness grounds solely, this motion does not implicate the merits of Mrs. Smith's cause of action. *See Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1182 (11th Cir. 2007) ("[W]hen a district court disposes of a case on justiciability (mootness) grounds we will treat the district court's determination as if it was ruling on a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)[.]"); *Myrick v. United States Dep't of Veterans Affairs*, No. 2:16CV555-MHT-WC, 2017 WL 1074362, at *6 (M.D. Ala. Mar. 1, 2017) (finding that defendant's motion to dismiss, which contended that plaintiff's *Bivens* claim was moot, did not implicate the merits of plaintiff's claim). Accordingly, the court will analyze the motion as a factual attack, considering both the complaint and the evidence in the record. *See Williamson*, 645 F.2d at 413.

### B. <u>Whether the ADA Claims are Moot</u>

"The doctrine of mootness derives directly from the case-or-controversy limitation because an action that is moot cannot be characterized as an active case or controversy." *Troiano v. Supervisor of Elections in Palm Beach Cty., Fla.*, 382 F.3d 1276, 1282 (11th Cir. 2004). "[A] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Id.*

However, "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to his old ways." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). Accordingly, "the standard . . . for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000). The "formidable," "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Id.* at 190, 189.

"[I]n determining mootness where a private defendant has voluntarily ceased the conduct at issue," courts consider three factors:

> (1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit; and (3) whether, in ceasing the conduct, the defendant has acknowledged liability.

*Sheely*, 505 F.3d at 1184. The Defendants contend that they satisfy each of the *Sheely* factors. The court disagrees based on the allegations in Mrs. Smith's complaint.

### 1. Whether the Challenged Conduct Was Isolated

"[C]ourts are more likely to find that the challenged behavior is not reasonably likely to recur where it constituted an isolated incident, was unintentional, or was at least engaged in reluctantly." *Sheely*, 505 F.3d at 1184. Here, Mrs. Smith has not alleged or offered any evidence that she or other disabled individuals with service animals were previously excluded or otherwise discriminated against by the Defendants. *See* docs. 1; 31-1. Moreover, Wilson's efforts after the incident to educate her employees about proper practices concerning service animals suggest that the Defendants' allegedly discriminatory conduct is not a "continuing and deliberate" practice. *Cf. Sheely*, 505 F.3d at 1185 (rejecting mootness contention where defendant's conduct was "the result of a years-long policy . . . enforced on multiple occasions"). And there is no evidence before the court that, after this one incident, the Defendants subsequently barred or required other individuals with service animals to provide documentation. On their own, these facts would generally satisfy the first factor. However, two things preclude the court from making such a finding at this juncture. First, Mrs. Smith maintains in her complaint that, even after Mr. Smith provided the service animal documentation, either Chaffin or Wilson allegedly demanded that Mrs. Smith "stand at the entrance [of the store] with Sassy and not move" while Mr. Smith made his purchase. Docs. 31-1 ¶ 17; 1 ¶ 27. If true, this may undermine the

Defendants' assurances that their discriminatory conduct is unlikely to recur. Second, as Mrs. Smith notes, she has not yet had an opportunity to conduct discovery as to whether the Defendants have demanded service animal documentation from customers or excluded disabled individuals with service animals from their store on other occasions. *See* doc. 31 at 13. Indeed, "some courts have refused to grant such a motion [to dismiss for lack of jurisdiction] before a plaintiff has had a chance to discover the facts necessary to establish jurisdiction." *Williamson*, 645 F.2d at 414. In light of the dispute regarding what transpired after Mr. Smith provided the documentation, and because discovery and a hearing would aid the court, the court finds that limited discovery is needed to ascertain whether the Defendants satisfy the first factor of the analysis.

2. Whether the Defendants Had a Genuine Change of Heart

In determining whether defendants' cessation is motivated by a "genuine change of heart" rather than timed to avoid liability, courts consider when the defendants ceased engaging in the challenged conduct. *Sheely*, F.3d at 1186; *see, e.g.*, *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1333 (11th Cir. 2004) (finding case was moot where defendant amended the challenged "Sign Code" before it had been sued); *Sec'y of Labor, U.S. Dep't of Labor v. Burger King Corp.*, 955 F.2d 681, 684 (11th Cir. 1992) (finding case was not mooted by defendant's promise to change its employment policies "on the eve of trial"). Here,

the Defendants contend that they experienced a "genuine change of heart," evidenced by Wilson's purported instructions to store employees, immediately following the incident, that employees cannot demand that potential customers provide documentation for service animals. Docs. 18 at 12; 17-1 ¶ 9. Both Wilson and Chaffin aver that they learned that such requests are illegal from Chief Long, who allegedly told them this after arriving on scene. Docs. 17-1 ¶ 7; 17-2 ¶ 7. However, Mrs. Smith disputes this assertion, contending that Chief Long stated that the City Attorney had told Chief Long that the Defendants and the police *could* request documentation for service animals. Doc. 31-1 ¶ 14. Even if true, this dispute regarding what Chief Long stated does not undermine the Defendants' assertion that, after the Smiths left their facility, they immediately changed their discriminatory policies and trained their employees accordingly.

### 3. Whether the Defendants Have Acknowledged Liability

It is clear that the Defendants have acknowledged liability for illegally demanding proof that Sassy was a service animal. Docs. 17-1 ¶¶ 6-8; 17-2 ¶¶ 4-6; *see* 28 C.F.R. § 36.302(c)(6) ("A public accommodation shall not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal."). However, this is just one aspect of Mrs. Smith's claim. Relevant here, the Defendants have not admitted to purportedly demanding that Mrs. Smith remain at the store's entrance even after Mr. Smith provided the

service animal registration, docs. 17-1 ¶ 8; 17-2 ¶ 8; *see* docs. 1 ¶¶ 27-28; 31-1 ¶¶ 17-18. Contrary to the Defendants' contention, the alleged demand that Mrs. Smith remain at the store entrance is relevant to Mrs. Smith's ADA claim that the Defendants discriminated against her by excluding her and her service animal from areas of the store accessible to the general public and thereby denying her equal access to the store.[8] *See* 28 C.F.R. § 36.302(c)(7). Because the Defendants' have failed to admit to this alleged discriminatory conduct, they have not met their burden with respect to the third *Sheely* factor.

## CONCLUSION AND ORDER

To close, because the court must make "factual determinations decisive of [this] motion to dismiss for lack of jurisdiction," the court "must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss." *Williamson*, 645 F.2d at 413; *see Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731 (11th Cir. 1982) (reversing the district court's dismissal for lack of subject matter jurisdiction because "Plaintiff must be given an opportunity

---

[8] The parties also dispute whether the alleged ADA violations create multiple causes of action. *See* docs. 1 at 5-24; 31 at 7-11; 33 at 5-6. Given that Title III only permits private actions for injunctive relief and attorney's fees, and the alleged violations arose from a single incident of discrimination, the court concludes that the alleged conduct gives rise to a single cause of action for injunctive relief and attorney's fees. *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013) (noting that Title III of the ADA only permits a private plaintiff to seek injunctive relief) (citing 42 U.S.C. 12188(a)); 42 U.S.C. § 12205 (authorizing recovery of attorney's fees for ADA Title III actions); *White v. Divine Investments Inc.*, 286 F. App'x 344, 346 (9th Cir. 2008) (rejecting plaintiff's contention that § 12182(a) "creat[ed] two separate causes of action, one for a failure to remove architectural barriers and another for a violation of the right to 'full and equal enjoyment' of a public accommodation.").

to develop facts sufficient to support a determination on the issue of jurisdiction."). Therefore, in light of the Defendants' failure to satisfy the first and third factors of the relevant inquiry, the court cannot conclude at this time that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 189. Consequently, the motion, doc. 17, is **DENIED WITHOUT PREJUDICE**, and the parties' respective motions for extensions, docs. 27 and 32, are **MOOT**.

The parties have 60 days to conduct discovery on the jurisdictional issues raised by the Defendants. This matter is **SET** for an **EVIDENTIARY HEARING** at <u>**3:30 p.m.**</u> on <u>**July 17, 2019**</u> at the Federal Courthouse in Huntsville, Alabama on the issue of mootness.

**DONE** the 1st day of May, 2019.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE